Electronically FILED by
Superior Court of California,
County of Los Angeles
1/28/2025 6:19 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By E. Galicia, Deputy Clerk

PANISH | SHEA | RAVIPUDI LLP
ADAM SHEA, State Bar No. 166800
  *shea@panish.law*
NICHOLAS W. YOKA, State Bar No. 314906
  *nyoka@panish.law*
JORDAN PHILLIPS, State Bar No. 351974
  *jphillips@panish.law*
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone: 310.477.1700
Facsimile: 310.477.1699

LAW OFFICES OF RAMON GARCIA, P. C.
ORLANDO F. GARCIA (*pro hac vice pending*)
  *ogarcia@ramongarcia-law.com*
222 W University Drive
Edinburg, Texas 78539
Telephone: 956.383.7441
Facsimile: 956.381.0825

Attorneys for Plaintiffs

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| LUISA ZAPO REYES, an individual, PEDRO COBIX OLIN an individual, and CELIA ALEGRIA DOMINGUEZ, individually and as successor in interest to Decedent Pedro Cobix Zapo; ISIDRO OLEA ALVAREZ, an individual, NATALIA CANO MORENO, an individual, GUILLERMINA M. GARCIA, individually and as successor in interest to Decedent Fernando Olea Cano; ZENON OSORIO VASQUEZ, an individual, and VERERANDA CASTILLO CLEMENTE, an individual, as wrongful death heirs of Decedent Juan Osorio Castillo; FABIANA MALDONADO ORTIZ, an individual; and ANDRES JIMENEZ MENDES, an individual, as wrongful death heirs of Decedent Alfonso Jimenez Maldonado, <br><br> Plaintiffs, <br> v. <br><br> HARBOR FREIGHT TOOLS USA, INC., a Delaware corporation; and DOES 1 through 50, inclusive, <br> Defendants. | Case No.  25STCV02442 <br><br> **COMPLAINT FOR DAMAGES** <br><br> **1) STRICT PRODUCT LIABILITY** <br><br> **2) NEGLIGENCE – WRONGFUL DEATH AND PRODUCT LIABILITY** <br><br> **3) BREACH OF WARRANTIES** <br><br> **4) SURVIVAL ACTION** <br><br> **5) SURVIVAL ACTION** <br><br> **DEMAND FOR JURY TRIAL** |

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

COME NOW plaintiffs, ISIDRO OLEA ALVAREZ, an individual, NATALIA CANO MORENO, an individual, GUILLERMINA M. GARCIA, individually and as successor in interest to Decedent Fernando Olea Cano; LUISA ZAPO REYES, an individual, PEDRO COBIX OLIN, an individual, and CELIA ALEGRIA DOMINGUEZ, individually and as successor in interest to Decedent Pedro Cobix Zapo; ZENON OSORIO VASQUEZ, an individual, and VERERANDA CASTILLO CLEMENTE, an individual, as wrongful death heirs of Decedent Juan Osorio Castillo; FABIANA MALDONADO ORTIZ, an individual; and ANDRES JIMENEZ MENDES, an individual, as wrongful death heirs of Decedent Alfonso Jimenez Maldonado (collectively "plaintiffs"), as wrongful death heirs of Decedents Fernando Olea Cano, Pedro Cobix Zapo, Juan Osorio Castillo, and Alfonso Jimenez Maldonado, for causes of action against defendant HARBOR FREIGHT TOOLS USA, INC., a Delaware corporation; and DOES 1 through 50, inclusive, and each of them, who complain and allege as follows:

## GENERAL ALLEGATIONS

1. This case arises from the personal injuries and wrongful deaths suffered by Decedents Fernando Olea Cano, Pedro Cobix Zapo, Juan Osorio Castillo, and Alfonso Jimenez Maldonado (hereinafter "decedents") on January 29, 2023, in Greenville, South Carolina. On that date, decedents suffered significant injury and were tragically killed from carbon monoxide poisoning while sleeping when a dangerously defective Predator 3500 portable generator spewed carbon monoxide throughout their house (hereinafter "subject portable generator"). The subject portable generator was red and black and labeled "PREDATOR".

2. Plaintiffs are informed and believe that, as set forth in detail below, decedents' deaths were a direct, proximate, and foreseeable result of the despicable conduct of defendant Harbor Freight Tools USA, Inc. (hereinafter "Harbor Freight Tools USA") and DOES 1 through 50, inclusive, and conducted in conscious disregard of the rights and safety of others, by knowingly placing the subject portable generator on the market that would cause injury or death from carbon monoxide poisoning. Defendant and DOES 1 through 50, inclusive, knew that this

2

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

PANISH | SHEA | RAVIPUDI LLP

product was dangerous and defective and that it had caused death and injuries to other people prior to the death of decedents, but failed to take any meaningful action in response to those deaths.

3. Plaintiffs are informed, believe, and thereon allege that at all times relevant and mentioned herein, defendant and DOES 1 through 50, inclusive, caused serious bodily injury in connection with the subject incident. Plaintiffs are further informed, believe, and thereon allege that at all times relevant and mentioned herein, as a legal, direct, and proximate result of the reckless and negligent conduct of defendant, decedents Fernando Olea Cano, Pedro Cobix Zapo, Juan Osorio Castillo, and Alfonso Jimenez Maldonado were injured in their person by the subject incident and survived for an ascertainable period of time after their initial injury during the subject incident.

4. Plaintiffs are the surviving biological heirs of decedents Fernando Olea Cano, Pedro Cobix Zapo, Juan Osorio Castillo, and Alfonso Jimenez Maldonado. Plaintiffs, therefore, bring causes of action for the injuries and wrongful deaths of decedents.

5. Plaintiffs are informed, believe, and thereupon allege, that at all times herein mentioned, defendant and DOES 1 through 50 failed to utilize available safety mechanisms and protective devices to prevent carbon monoxide poisoning. For example, plaintiffs are further informed, believe, and thereupon allege, that at all times herein mentioned, defendant and DOES 1 through 50 manufactured, distributed, and sold other portable generator models that have a carbon monoxide cut-off sensor switch, which would have prevented the injuries alleged herein, including the untimely death of decedents.

**PARTIES**

6. At all relevant times, plaintiff GUILLERMINA M. GARCIA was the legal wife of decedent Fernando Olea Cano, thereby qualifying Celia Alegria Dominguez as successor-in-interest, for purposes of maintaining a claim for survival damages. For these same reasons, Plaintiff GUILLERMINA M. GARCIA, has standing to bring a wrongful death cause of action as a wrongful death heir for decedent Fernando Olea Cano, under section 377.60 of the California

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

Code of Civil Procedure.  At all times relevant herein, plaintiff GUILLERMINA M. GARCIA, was, and is, a resident of Guerrero, Mexico.

7.    At all times relevant and mentioned herein, plaintiff Isidro Olea Alvarez is the surviving biological father of decedent Fernando Olea Cano.  At all times relevant herein, plaintiff Isidro Olea Alvarez, was, and is, a resident of Guerrero, Mexico.  At all times herein relevant, Plaintiff Isidro Olea Alvarez was financially dependent on decedent Fernando Olea Cano, and as such, has standing to bring a wrongful death cause of action as a wrongful death heir for decedent Fernando Olea Cano, under section 377.60(b) of the California Code of Civil Procedure.

8.    At all times relevant and mentioned herein, plaintiff Natalia Cano Moreno is the surviving biological mother of decedent Fernando Olea Cano.  At all times relevant herein, plaintiff Natalia Cano Moreno, was, and is, a resident of Guerrero, Mexico.  At all times herein relevant, Plaintiff Natalia Cano Moreno was financially dependent on decedent Fernando Olea Cano, and as such, has standing to bring a wrongful death cause of action as a wrongful death heir for decedent Fernando Olea Cano, under section 377.60(b) of the California Code of Civil Procedure.

9.    At all relevant times, plaintiff Celia Alegria Dominguez was the surviving spouse of decedent Pedro Cobix Zapo, thereby qualifying Celia Alegria Dominguez as successor-in-interest, for purposes of maintaining a claim for survival damages.  For these same reasons, at all relevant times, Celia Alegria Dominguez, has standing to bring a wrongful death cause of action as a wrongful death heir for decedent Pedro Cobix Zapo, under section 377.60 of the California Code of Civil Procedure.  At all times relevant herein, plaintiff Celia Alegria Dominguez was, and is, a resident of Veracruz, Mexico.

10.    At all times relevant and mentioned herein, plaintiff Luisa Zapo Reyes was the surviving biological mother of decedent Pedro Cobix Zapo. At all times relevant herein, plaintiff Luisa Zapo Reyes was, and is, a resident of Veracruz, Mexico.  At all times herein relevant, Plaintiff Luisa Zapo Reyes was financially dependent on decedent Pedro Cobix Zapo, and as such, has standing to bring a wrongful death cause of action as a wrongful death heir for decedent Pedro Cobix Zapo, under section 377.60(b) of the California Code of Civil Procedure.

4

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

PANISH | SHEA | RAVIPUDI LLP

11. At all times relevant and mentioned herein, plaintiff Pedro Cobix Olin is the surviving biological father of decedent Pedro Cobix Zapo. At all times relevant herein, plaintiff Pedro Cobix Olin was, and is, a resident of Veracruz, Mexico. At all times herein relevant, Plaintiff Pedro Cobix Olin was financially dependent on decedent Pedro Cobix Zapo, and as such, has standing to bring a wrongful death cause of action as a wrongful death heir for decedent Pedro Cobix Zapo, under section 377.60(b) of the California Code of Civil Procedure.

12. At all times relevant and mentioned herein, plaintiff Zenon Osorio Vasquez is the surviving biological father of decedent Juan Osorio Castillo. At all times relevant herein, plaintiff Zenon Osorio Vasquez was, and is, a resident of Veracruz, Mexico. At all times herein relevant, Plaintiff Zenon Osorio Vasquez was financially dependent on decedent Juan Osorio Castillo, and as such, has standing to bring a wrongful death cause of action as a wrongful death heir for decedent Juan Osorio Castillo, under section 377.60(b) of the California Code of Civil Procedure.

13. At all times relevant and mentioned herein, plaintiff Vereranda Castillo Clemente is the surviving biological mother of decedent Juan Osorio Castillo. At all times relevant herein, plaintiff Vereranda Castillo Clemente was, and is, a resident of Veracruz, Mexico. At all times herein relevant, Plaintiff Vereranda Castillo Clemente was financially dependent on decedent Juan Osorio Castillo, and as such, has standing to bring a wrongful death cause of action as a wrongful death heir for decedent Juan Osorio Castillo, under section 377.60(b) of the California Code of Civil Procedure.

14. At all times relevant and mentioned herein, plaintiff Andres Jimenez Mendes is the surviving biological father of decedent Alfonso Jimenez Maldonado. At all times relevant herein, plaintiff Andres Jimenez Mendes was, and is, a resident of Maya, Guatemala. At all times herein relevant, Plaintiff Andres Jimenez Mendes was financially dependent on decedent Alfonso Jimenez Maldonado, and as such, has standing to bring a wrongful death cause of action as a wrongful death heir for decedent Alfonso Jimenez Maldonado, under section 377.60(b) of the California Code of Civil Procedure.

15. At all times relevant and mentioned herein, plaintiff Fabiana Maldonado Ortiz is the surviving biological mother of decedent Alfonso Jimenez Maldonado. At all times relevant

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

herein, plaintiff Fabiana Maldonado Ortiz was, and is, a resident of Maya, Guatemala. At all times herein relevant, Plaintiff Fabiana Maldonado Ortiz was financially dependent on decedent Alfonso Jimenez Maldonado, and as such, has standing to bring a wrongful death cause of action as a wrongful death heir for decedent Alfonso Jimenez Maldonado, under section 377.60(b) of the California Code of Civil Procedure.

16.    As a result of decedents' use of defendant's Harbor Freight Tools USA, Inc. and DOES 1 through 50, inclusive, subject portable generator, decedents suffered from carbon monoxide poisoning while sleeping when the defective portable generator spewed carbon monoxide throughout their house, which ultimately resulted in decedents' injuries and untimely death.

17.    The conduct of defendant and DOES 1 through 50, inclusive, was a substantial factor and proximate cause of the serious personal injuries and death sustained by decedents.

18.    Plaintiffs are informed and believe, and thereupon allege, that defendant Harbor Freight Tools USA, Inc. is, and at all times herein relevant was, a Delaware corporation with a principal place of business of 26677 Agoura Road, Calabasas, California 91302. Harbor Freight Tools USA, Inc. is authorized to do, has regularly done, and is doing, business in the State of California, and has systematically conducted business on a regular basis in the State of California, under and by virtue of the laws of the State of California. Harbor Freight Tools USA, Inc. may be served with process through its registered agents at 7801 Folsom Blvd., #202, Sacramento, CA 95826.

19.    Defendant Harbor Freight Tools USA, Inc. was involved in the design, marketing, packaging, distribution, and sale of the subject portable generator, and the distribution of information regarding the safety and the proper use of the product. Plaintiffs are informed, believe, and thereon allege, that at all times herein relevant, defendant Harbor Freight Tools USA, Inc. designed and performed testing of the subject portable generator with the State of California. Plaintiff is further informed, believes, and thereon alleges, that at all times herein relevant, defendant Harbor Freight Tools USA, Inc. marketed and sold the subject portable generator within the State of California.

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

20. The true names and capacities, whether individual, plural, corporate, partnership, associate, or otherwise, of DOES 1 through 50, inclusive, are unknown to plaintiffs, who therefore sue said defendants by such fictitious names. The full extent of the facts linking such fictitiously sued defendants are unknown to Plaintiffs. Plaintiffs are informed, believe, and thereon allege, that each of the defendants designated herein as a DOE was, and is, negligent, or in some other actionable manner, responsible for the events and happenings hereinafter referred to, and thereby negligently, or in some other actionable manner, legally, and proximately caused the hereinafter described injuries and damages to Plaintiffs. Plaintiffs will hereafter seek leave of the Court to amend this Complaint to show the defendants' true names and capacities after the same have been ascertained.

21. Plaintiffs are informed, believe, and thereon allege, that at all times mentioned herein, defendant and DOES 1 through 50, inclusive, and each of them, were agents, servants, employees, successors in interest, and/or joint venturers of their co-defendants, and were, as such, acting within the course, scope, and authority of said agency, employment, and/or venture, and that each and every defendant, as aforesaid, when acting as a principal, was negligent in the selection and hiring of each and every other defendant as an agent, servant, employee, successor-in-interest, and/or joint venturer.

**THE SUBJECT PORTABLE GENERATOR**

*Overview*

22. Portable generators, such as the subject portable generator, have been commonly used to provide electricity in homes, particularly during power outages. Prior to 2000, as reported by the United States Consumer Product Safety Commission (hereinafter "CPSC"), portable generators became increasingly popular and available. Due to the low cost, wide availability, and the number of large-scale power outages, many consumers began considering portable generators as necessities for emergencies.

23. Generally, portable generators are gasoline-fueled with internal combustion engines. These engines, which were used in portable generators, sometimes discharge harmful

7

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

exhaust, including carbon monoxide.  Carbon monoxide is a colorless and odorless gas, which is also extremely lethal.  For decades, it has been widely known that portable generators have caused death and serious injury when carbon monoxide is defectively discharged from the portable generators into homes.  Prior to 2000, these portable generators rarely possessed any emission controls to mitigate harmful exhaust, including carbon monoxide.  Such controls, however, as discussed below, started becoming commonly used soon thereafter.

### *History of Carbon Monoxide Poisoning*

24.    In 2016, the CPSC reported that it is known that a typical 5kW generator emits a weighted average carbon monoxide rate of nominally 15000 g/hr.  In comparison, a mid-size late 1990's vehicle emits 2.4-5.4 g/hr of carbon monoxide.

25.    On March 17, 2016, the CPSC held a presentation titled "CPSC Staff Technical Research to Address the Carbon Monoxide Hazard for Portable Generators."  There, the dire concern about portable generators and the number of reported carbon monoxide deaths associated with portable generators was highlighted.  Specifically, the CPSC reported that from 2004 to 2012, there have been 666 deaths due carbon monoxide poisoning from portable generators.  In addition, the location where three-fourths of the carbon monoxide deaths from portable generators had occurred was within a fixed-structure home.  From 2004 to 2012, the CPSC also estimated that 8,703 portable generator-related carbon monoxide injuries had resulted in emergency room visits.

26.    Defendant also knew that there were many reasons why consumers were placing portable generators inside or close to their homes, including fear of theft and concerns that direct exposure to precipitation may damage the portable generator unit.  Defendant also knew that the growth in the market for portable generators is largely driven by emergency purchases.  Prior to 2000, as reported by the CPSC, portable generators became increasingly popular and available to provide electricity in homes, particularly during power outages.  In 2017, the CPSC wrote a letter that the problems from "unreasonable risk of injury and death associated with portable generators" became "even more urgent after the many deaths following the recent hurricanes in Florida, Texas, and Puerto Rico."

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

PANISH | SHEA | RAVIPUDI LLP

*Carbon Monoxide Detectors for Portable Generators*

27.    For many years, technology has been available to incorporate a control system into portable generators to automatically shut off the engine when carbon monoxide levels rise to the level that could pose a risk of injury or death.

28.    In August of 2006, the CPSC released a report titled "Demonstration of a Remote Carbon Monoxide Sensing Automatic Shut Off Device for Portable Generators."  The CPSC reported that prior to 2016 portable generators had become increasingly popular to consumers and "have resulted in an increase in the number of CO related deaths."  This increase, moreover, "is particularly evident in areas that have lost electrical power for extended periods due to severe weather."

29.    Therefore, starting in 2005, the CPSC began demonstrating the use of a "CO detection system" for use with a portable generator to increase safety and mitigate the risk of death and injury from portable generators.  The report details the design and testing of the carbon monoxide detection system and summarizes the system as follows:

> The concept utilizes wireless technology combined with CO detection devices and off-the-shelf circuitry designed to provide an **automatic shut off feature on portable generators**.  If elevated levels of CO accumulate in occupied areas of a household, the CO detection device sends a command to shut off the generator, **thus eliminating the CO source**.

30.    The CPSC reported that the test results successfully demonstrated the use of auto shut off devices – on portable generators – that activate when elevated carbon monoxide levels are detected in home.

*Defendant Harbor Freight Tools USA, Inc.'s Knowledge and Failure to Act*

31.    As discussed above, the danger of carbon monoxide poisoning from portable generators was widely known.

/ / /

/ / /

/ / /

9

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

32.     As of June 6, 2024, defendant Harbor Freight Tools USA, Inc. maintains an online, publicly accessible website under the domain name https://www.harborfreight.com.[1]

33.     Defendant Harbor Freight Tools USA, Inc.'s website has a page titled "Generator Safety", warning consumers that "carbon monoxide is a poison gas that you cannot see or smell and is referred to as the "Silent Killer."  Death can occur within minutes of inhalation if the levels emitted are high enough. Generator exhaust emits carbon monoxide."

34.     Prior to the date of the subject incident, and due to the danger caused by carbon monoxide poisoning from portable generators, defendant Harbor Freight Tools USA, Inc. had already started manufacturing and selling other portable generators that included an automatic shut off.  Defendant had named its automatic shut off, that it had incorporated into some of its portable generators, "CO SECURE".  Defendant Harbor Freight Tools USA, Inc. describes the CO SECURE technology as follows:

> If carbon monoxide levels near the generator reach a dangerous level, the CO SECURE™ system shuts off the generator automatically. In the event of a shutoff, the generator's control panel will also indicate high carbon monoxide levels via a flashing red light for five minutes.[2]

35.     Defendant knew of the life-saving benefits of CO SECURE technology long before the subject incident and failed to take any reasonable measures to incorporate the technology into the subject portable generator and failed to reasonably warn consumers of the high danger of using a portable generator that did not utilize any automatic shut off technology.  For many years, prior to the subject incident, defendant had the ability to incorporate the CO SECURE technology – and was, in fact, already incorporating the technology – into some of its portable generators.  But, defendant failed to take reasonable action to incorporate the technology into the subject portable generator.  Had the subject portable generator incorporated an automatic shut off, many lives could have been saved and the subject incident could have been avoided.  Moreover, had defendant reasonably warned consumers, including decedents, of the high risk and danger of using

[1] US: https://www.harborfreight.com (Last Accessed June 6, 2024).

[2] US: https://www.harborfreight.com/co-secure-generator-safety (Last Accessed June 6, 2024).

10

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

PANISH | SHEA | RAVIPUDI LLP

a portable generator that did not utilize any automatic shut off, many lives, including decedents' lives, could have been saved.

36.    This tragic incident was caused by defendant Harbor Freight Tools USA, Inc.'s failure to incorporate a simple CO sensor and shutoff system.  This was not done by accident or through some justifiable negligence.  Rather, defendant Harbor Freight Tools USA, Inc. knew that it could turn a profit by convincing consumers that the subject portable generator was safe, despite being fully aware for nearly 20 years of available safety mechanisms and protective devices to almost entirely eliminate deaths and injuries from carbon monoxide poisoning.  While defendant Harbor Freight Tools USA, Inc. could have implemented long existing and inexpensive fixes to its product, it chose to not do so.  This failure to take any action was in the face of knowledge that its portable generators were causing tragic fatalities.  Defendant Harbor Freight Tools USA, Inc. could have prevented this incident, but knowingly chose to disregard the extremely high risk of fatalities caused by carbon monoxide poisoning and the inexpensive available fixes to address the defect.

37.    Defendant knew about these risks as long as they sold the subject portable generator.  Among other things, defendant Harbor Freight Tools USA, Inc. had knowledge: (1) of the design and testing of the carbon monoxide detection system for years prior to manufacturing and selling the subject portable generator; (2) that major consumer groups, repeatedly issued warnings about the serious dangers of carbon monoxide poisoning from portable generators and the availability of safety enhancements to prevent such danger; (3) that from 2004 to 2012 there have been, at least, 666 deaths and 8,703 injuries due carbon monoxide poisoning from portable generators; (4) that most deaths and serious injuries from using portable generators occur from use within a fixed-structure home; and (5) that basic and widely used technology, including its own CO SECURE, would prevent death and injury from carbon monoxide poisoning.  But, ignoring well-documented and well-known safety concerns, defendant marketed and sold the subject portable generator – without any type of shut-device – in the United States as suitable for consumer use.

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

38.    Despite knowing that the subject portable generator was unsafe for use by consumers, defendant marketed and sold the product as safe for use, leading consumers to reasonably believe that the product is safe for its stated purpose. Defendant Harbor Freight Tools USA, Inc. continued to sell the subject portable generators without a carbon monoxide detector or any sort of shut off device.

## FIRST CAUSE OF ACTION

**(Strict Product Liability by all Plaintiffs against Defendant Harbor Freight Tools USA, Inc. and DOES 1 through 50, inclusive)**

39.    Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

40.    Defendant and DOES 1 through 50, inclusive, conduct as alleged herein was done with oppression, fraud, and malice. Defendant was fully aware of the safety risks of carbon monoxide poisoning from the subject portable generator. Nonetheless, defendant deliberately sold their product and crafted their labeling, marketing, and promotion to mislead consumers.

41.    Plaintiffs are informed, believe, and thereupon allege, that at all times herein mentioned, defendant and DOES 1 through 50, inclusive, and each of them, designed, developed, tested, manufactured, fabricated, assembled distributed, bought, sold, inspected, serviced, repaired, maintained, marketed, warranted, supplied, modified, placed, and/or provided the subject portable generator, which was used by decedents.

42.    Plaintiffs are informed, believe, and thereupon allege, that the subject portable generator was defective when placed on the market by defendant and DOES 1 through 50, inclusive, and each of them. Defendant and DOES 1 through 50, inclusive, and each of them knew that the defective subject portable generator had dangerous features, characteristics, operating instructions, and propensities, and were of such a nature that the defects would not be discovered in the normal course of inspection and operation by users thereof. As described in detail herein, defendant and DOES 1 through 50, inclusive, had notice of the substantial danger

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

PANISH | SHEA | RAVIPUDI LLP

and risks associated with the subject portable generator, including the high risk of carbon monoxide poisoning.

43. Defendant and DOES 1 through 50, inclusive, owed a duty to warn consumers about the risks of the subject portable generator because they knew or should have known that the product involved risk of harm when used for its intended or expected purpose, as well as any reasonably foreseeable use.

44. At all times relevant, defendant and DOES 1 through 50 knew or should have known that the use of the subject portable generator for any period of time significantly increased the risk of potential carbon monoxide poising – dangers that have been confirmed and known to defendant and DOES 1 through 50, inclusive.

45. Plaintiffs are informed, believe, and thereupon allege, that at all times herein mentioned, defendant and DOES 1 through 50, inclusive, and each of them, that the subject portable generator was being used in a reasonably foreseeable manner by decedents.

46. Plaintiffs are informed, believe, and thereupon allege, that at all times herein mentioned, defendant and DOES 1 through 50, inclusive, and each of them, the subject portable generator was defective in design, testing, development, manufacture, fabrication, assembly, distribution, inspection, service, repair, maintenance, marketing, and/or modification, and the instructions and/or warnings pertaining to its use were defective and inadequate, in that the subject portable generator, was capable of causing, and did cause, substantial personal injuries while being used in a reasonably foreseeable manner, thereby rendering the subject portable generator, defective, unsafe, and dangerous for use by the users thereof for multiple reasons.

47. The dangerous nature of the subject portable generator is not open and obvious to consumers, and defendant and DOES 1 through 50, inclusive, had no reason to believe consumers, including decedents, would have realized the subject portable generator's dangerous nature.

48. As such, defendant and DOES 1 through 50, inclusive, failed to properly and adequately warn and instruct decedents as to the risks of the subject portable generator, especially that the subject portable generator was dangerous and not suitable for use while asleep due to the substantial risk of carbon monoxide poisoning.

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

PANISH│SHEA│RAVIPUDI LLP

49.	Plaintiffs are informed, believe, and thereupon allege, that at all times herein mentioned, that the subject portable generator had potential risks that were known and/or knowable in light of the scientific and medical knowledge that was generally accepted in the scientific community at the time of the manufacture, distribution, and sale of the subject portable generator.

50.	Plaintiffs are informed, believe, and thereupon allege, that at all times herein mentioned, that the subject portable generator did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way.

51.	Had decedents been warned that the use of the subject portable generator had a significant risk of potential carbon monoxide leaking, they would not have used it.

52.	Plaintiffs are informed, believe, and thereupon allege, that at all times herein mentioned, defendant and DOES 1 through 50, inclusive, and each of them, knew that the subject portable generator was dangerous for use, yet they still negligently allowed it to be placed into the stream of commerce.  As a result of said conduct, the subject portable generator was not appropriate for use and the purposes for which it was intended, and it was likely to injure or kill people.  Furthermore, the unreasonable and dangerous conditions created by the conduct of defendant and DOES 1 through 50, inclusive, and each of them, were not made/known to decedents and no warnings or inadequate warnings were provided by defendant and DOES 1 through 50, inclusive.

53.	This was not done by accident or through some justifiable negligence.  Rather, defendant knew that it could turn a profit by convincing consumers that subject portable generator was safe.  This was done, despite defendant being fully aware of available safety mechanisms and protective devices to prevent carbon monoxide poisoning.  For example, as alleged herein, plaintiffs are further informed and believe that defendant and DOES 1 through 50, inclusive, manufactured, distributed, and sold other portable generator models that have a carbon monoxide cut-off sensor switches, including, but not limited to, defendant's CO SECURE technology, which would have prevented the injuries alleged herein, including the untimely death of decedents.

14

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

54.     Defendant and DOES 1 through 50, inclusive, knew or should have known that consumers would reasonably rely on defendant and DOES 1 through 50, inclusive, to warn them of the dangers posed by the subject portable generator.

55.     Plaintiffs are informed, believe, and thereupon allege, that at all times herein mentioned, the ordinary consumer, including decedents, would not have recognized the potential risks of the subject portable generator.

56.     Plaintiffs are informed, believe, and thereupon allege, that at all times herein mentioned, defendant and DOES 1 through 50, inclusive, failed to adequately warn potential users, including decedents, of the potential risks of using the subject portable generator.

57.     Defendant and DOES 1 through 50, inclusive, knew or should have known that the subject portable generator was unreasonably dangerous because it lacked proper warnings and yet defendant and DOES 1 through 50, inclusive, continued to design, manufacture, sell, distribute, market, promote, and supply the subject portable generator, so as to maximize sales and profits at the expense of its users' health and safety, including decedents.

58.     Defendant's objective to convince consumers of the safety of the subject portable generator was accomplished not only through its misleading labeling, but through a comprehensive scheme of selective fraudulent research and testing, misleading advertising, and deceptive omissions.  Decedents were denied the right to make an informed decision about whether to purchase or use the subject portable generator, knowing the full risks attendant to that use.  Such conduct was despicable and done with conscious disregard of the rights and safety of decedents.

59.     There is no indication that defendant will stop its deceptive and unlawful marketing practices unless punished and deterred.  Accordingly, plaintiffs request punitive damages against defendant.

60.     Defendant and DOES 1 through 50, inclusive, anticipated and expected that the subject portable generator would reach consumers, including decedents, without change from its original manufactured condition, and the subject portable generator did in fact reach decedents without change from its original manufactured condition.

15

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

61. At all times relevant times hereto, decedents used the subject portable generator in a manner intended or expected, recommended, promoted, and marked by defendant and DOES 1 through 50, inclusive.

62. Even when used in a reasonably foreseeable or intended manner, the subject portable generator was unreasonably dangerous because its use carried with it the significantly high risk of carbon monoxide poisoning, dangers that have been confirmed and known to defendant and DOES 1 through 50, inclusive.

63. The defects described herein was a substantial factor and the legal and proximate cause of the injuries, death, damages, and pain suffered as complained herein.

64. As a legal, proximate, and direct result of the aforementioned conduct of defendant and DOES 1 through 50, inclusive, and each of them, decedents were injured and hurt in their health, strength and activity, sustaining serious injuries to their body, and shock and injury to nervous system and person, all of which said injuries caused decedents great physical and mental pain and suffering.

65. As a legal, proximate, and direct result of the aforementioned conduct of defendant and DOES 1 through 50, inclusive, and each of them, decedents were compelled to and did employ the services of physicians, surgeons, and other medical personnel, and plaintiffs were compelled to and did incur other incidental expenses related to the necessary care and treatment of such injuries.

66. As a legal, direct, and proximate result of the negligence, carelessness, and/or violation of the law, by defendant and DOES 1 through 50, inclusive, plaintiffs have sustained damages resulting from the loss of love, affection, society, service, comfort, support, right of support, expectations of future support, and counseling, companionship, solace and mental support, as well as other benefits and assistance, of decedents, all to their general damages in a sum in excess of the jurisdictional limits of this Court, which will be stated according to proof, in accordance with California Code of Civil Procedure section 425.10.

67. As a legal, proximate, and direct result of the aforementioned conduct of defendant and DOES 1 through 50, inclusive, and each of them, plaintiffs will be deprived of financial

16

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

PANISH | SHEA | RAVIPUDI LLP

support, financial assistance, and/or household services of decedents in a sum in excess of the jurisdictional limits of this Court, which will be stated according to proof, in accordance with California Code of Civil Procedure section 425.10.

68.    As a legal, direct and proximate result of the conduct of defendant and DOES 1 through 50, inclusive, plaintiffs have incurred economic losses, including, but not limited to, funeral and burial expenses for decedents in an amount to be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

69.    Defendant's and DOES 1 through 50, inclusive, actions were done in a willful and conscious disregard for the rights and safety of decedents.  Defendant's conduct was despicable and so base, vile, and contemptible that it would be looked down on and despised by reasonable people.  This conduct, which was carried on by defendant with a willful and conscious disregard of the rights and safety of decedents, and the general public, was the direct, legal, and proximate cause of the injuries and deaths of decedents.

70.    Defendant's and DOES 1 through 50, inclusive, actions were either committed or authorized, ratified, or otherwise approved by officers, directors, or managing agents of defendant and DOES 1 through 50, inclusive, in a deliberate, cold, callous, malicious, and/or intentional manner, as fully set forth above.

71.    As a result, plaintiffs request the assessment of punitive damages against defendant, and DOES 1 through 50, inclusive, in an amount appropriate to punish or set an example of them for their despicable conduct in conscious disregard of the rights and safety of others that resulted in this, and other, tragic deaths.

72.    The conduct of Defendant and DOES 1 through 50, inclusive, was a substantial factor and proximate cause of the serious personal injuries and the deaths of decedents.

73.    As a legal, direct, and proximate result of the conduct of defendant and DOES 1 through 50, inclusive, plaintiff GUILLERMINA M. GARCIA, as a successor-in-interest to decedent Fernando Olea Cano, hereby seeks all damages accruing to decedent Fernando Olea Cano in a survival action, under California Code of Civil Procedure section 377.34, including punitive damages, against defendant and DOES 1 through 50, inclusive.

17

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

74.     As a legal, direct, and proximate result of the conduct of defendant and DOES 1 through 50, inclusive, plaintiff Celia Alegria Dominguez, as successor-in-interest to decedent Pedro Cobix Zapo, hereby seeks all damages accruing to decedent Pedro Cobix Zapo in a survival action, under California Code of Civil Procedure section 377.34, including punitive damages, against defendant and DOES 1 through 50, inclusive.

## SECOND CAUSE OF ACTION

**(Product Liability - Negligence by all Plaintiffs against Defendant Harbor Freight Tools USA, Inc. and DOES 1 through 50, inclusive)**

75.     Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

76.     The conduct of defendant and DOES 1 through 50, inclusive, as alleged herein, was done with oppression, fraud, and malice.  Defendant was fully aware of the safety risks of carbon monoxide poisoning from the subject portable generator.  Nonetheless, defendant deliberately sold their product and crafted their labeling, marketing, and promotion to mislead consumers.

77.     Plaintiffs are informed, believe, and thereupon allege, that at all times herein mentioned, defendant and DOES 1 through 50, inclusive, and each of them, designed, developed, tested, manufactured, fabricated, assembled distributed, bought, sold, inspected, serviced, repaired, maintained, marketed, warranted, supplied, modified, placed, and/or provided the subject portable generator, which was used by decedents.

78.     Harbor Freight Tools USA, Inc. have a duty to exercise ordinary care and safely design, develop, test, manufacture, fabricate, assemble, distribute, buy, sell, inspect, service, repair, maintain, market, warrant, supply, modify, place, and/or provide the subject portable generator, which was used by decedents.

79.     Harbor Freight Tools USA, Inc. were negligent in designing, developing, testing, manufacturing, fabricating, assembling, distributing, buying, selling, inspecting, servicing, repairing, maintaining, marketing, warranting, supplying, modifying placing, and/or providing the subject portable generator in the following ways:

18

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

PANISH | SHEA | RAVIPUDI LLP

a.    Designing the subject portable generator in a fashion, which did not, and is not, safe for general use;

b.    Designing the subject portable generator in a fashion, which did not, and is not, safe if accidently or purposely left on while sleeping;

c.    Designing the subject portable generator in a fashion, which did not, and does not, comport with existing standards and literature on safety;

d.    Failing to properly determine the adequacy and effectiveness of safety measures, if any, included in the design of the product prior to releasing the subject portable generator for consumer use;

e.    Failing to properly test the subject portable generator to determine or limit the risk of carbon monoxide poisoning during its normal, intended, or expected use;

f.    Failing to warn decedents of the hazards associated with the use of the subject portable generator;

g.    Failing to remove the subject portable generator from the market when defendant and DOES 1 through 50 knew or should have known that it was defective and/or unsafe;

h.    Marketing and labeling the products as safe for use, despite knowledge to the contrary; and

i.    Failing to act as would a reasonably prudent company under similar circumstances.

80.    The defects described herein was a substantial factor and the legal and proximate cause of the injuries and pain suffered by decedents and the damages suffered by plaintiffs as complained herein.

81.    Harbor Freight Tools USA, Inc. knew or should have known that the subject portable generator's design was unreasonably dangerous when used for its intended purpose, and yet defendant and DOES 1 through 50 continued to manufacture, sell distribute, market, and promote it, with disregard for the foreseeable harm to the consuming public, including decedents.

19

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

82.     Harbor Freight Tools USA, Inc. knew that the subject portable generator was dangerous, yet they still negligently allowed it to be placed into the stream of commerce.  As a result of said conduct, the subject portable generator was not appropriate for general usage and the purposes for which it was intended, and it was likely to injure or kill.  Furthermore, the unreasonable and dangerous conditions created by the conduct of the defendant and DOES 1 through 50, inclusive, and each of them, were not made known to decedents and no warnings or inadequate warnings were provided by defendant and DOES 1 through 50.

83.     This was not done by accident or through some justifiable negligence.  Rather, defendant knew that it could turn a profit by convincing consumers that subject portable generator was safe.  This was done, despite defendant being fully aware of available safety mechanisms and protective devices to prevent carbon monoxide poisoning.  For example, as alleged herein, plaintiff is further informed and believes that defendant and DOES 1 through 50 manufactured, distributed, and sold other portable generator models that have a carbon monoxide cut-off sensor switches, including, but not limited to, defendant's CO SECURE technology, which would have prevented the injuries alleged herein, including the untimely death of decedents.

84.     Harbor Freight Tools USA, Inc. anticipated and expected that the subject portable generator would reach consumers, including decedents, without change from its original manufactured condition, and the subject portable generator did in fact reach decedents without change from its original manufactured condition.

85.     At all times relevant times hereto, decedents used the subject portable generator in a manner intended or expected, recommended, promoted, and marked by defendant and DOES 1 through 50.

86.     Even when used in a reasonably foreseeable or intended manner, the subject portable generator was unreasonably dangerous because its use carried with it the significant risk of carbon monoxide poisoning, dangers that have been confirmed and known to defendant and DOES 1 through 50.

87.     Defendant's objective to convince consumers of the safety of the subject portable generator was accomplished not only through its misleading labeling, but through a

20

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

comprehensive scheme of selective fraudulent research and testing, misleading advertising, and deceptive omissions. Decedents were denied the right to make an informed decision about whether to purchase or use the subject portable generator, knowing the full risks attendant to that use. Such conduct was despicable and done with conscious disregard of the rights and safety of decedents.

88. There is no indication that defendant will stop its deceptive and unlawful marketing practices unless punished and deterred. Accordingly, plaintiffs request punitive damages against defendant.

89. As a legal, proximate, and direct result of the aforementioned conduct of defendant and DOES 1 through 50, inclusive, and each of them, decedents were injured and hurt in their health, strength and activity, sustaining serious injuries to their body, and shock and injury to nervous system and person, all of which said injuries caused decedents great physical and mental pain and suffering.

90. As a legal, proximate, and direct result of the aforementioned conduct of defendant and DOES 1 through 50, inclusive, and each of them, decedents were compelled to and did employ the services of physicians, surgeons, and other medical personnel, and plaintiffs were compelled to and did incur other incidental expenses related to the necessary care and treatment of such injuries.

91. As a legal, direct, and proximate result of the negligence, carelessness, and/or violation of the law, by defendant and DOES 1 through 50, inclusive, plaintiffs have sustained damages resulting from the loss of love, affection, society, service, comfort, support, right of support, expectations of future support, and counseling, companionship, solace and mental support, as well as other benefits and assistance, of decedents, all to their general damages in a sum in excess of the jurisdictional limits of this Court, which will be stated according to proof, in accordance with California Code of Civil Procedure section 425.10.

92. As a legal, proximate, and direct result of the aforementioned conduct of defendant and DOES 1 through 50, inclusive, and each of them, plaintiffs will be deprived of financial support, financial assistance, and/or household services of decedents in a sum in excess of the

21

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

jurisdictional limits of this Court, which will be stated according to proof, in accordance with California Code of Civil Procedure section 425.10.

93.    As a legal, direct and proximate result of the conduct of defendant and DOES 1 through 50, inclusive, plaintiffs have incurred economic losses, including, but not limited to, funeral and burial expenses for decedents in an amount to be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

94.    Defendant's and DOES 1 through 50, inclusive, actions were done in a willful and conscious disregard for the rights and safety of decedents.  Defendant's conduct was despicable and so base, vile, and contemptible that it would be looked down on and despised by reasonable people.  This conduct, which was carried on by defendant with a willful and conscious disregard of the rights and safety of decedents, and the general public, was the direct, legal, and proximate cause of the injuries and deaths of decedents.

95.    Defendant's and DOES 1 through 50, inclusive, actions were either committed or authorized, ratified, or otherwise approved by officers, directors, or managing agents of defendant and DOES 1 through 50, inclusive, in a deliberate, cold, callous, malicious, and/or intentional manner, as fully set forth above.

96.    As a result, plaintiffs request the assessment of punitive damages against defendant, and DOES 1 through 50, inclusive, in an amount appropriate to punish or set an example of them for their despicable conduct in conscious disregard of the rights and safety of others that resulted in this, and other, tragic deaths.

97.    The conduct of Defendant and DOES 1 through 50, inclusive, was a substantial factor and proximate cause of the serious personal injuries and the deaths of decedents.

98.    As a legal, direct, and proximate result of the conduct of defendant and DOES 1 through 50, inclusive, plaintiff GUILLERMINA M. GARCIA, as a successor-in-interest to decedent Fernando Olea Cano, hereby seeks all damages accruing to decedent Fernando Olea Cano in a survival action, under California Code of Civil Procedure section 377.34, including punitive damages, against defendant and DOES 1 through 50, inclusive.

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

99.     As a legal, direct, and proximate result of the conduct of defendant and DOES 1 through 50, inclusive, plaintiff Celia Alegria Dominguez, as successor-in-interest to decedent Pedro Cobix Zapo, hereby seeks all damages accruing to decedent Pedro Cobix Zapo in a survival action, under California Code of Civil Procedure section 377.34, including punitive damages, against defendant and DOES 1 through 50, inclusive.

## THIRD CAUSE OF ACTION

**(Breach of Express and Implied Warranties by all Plaintiffs against Defendant Harbor Freight Tools USA, Inc. and DOES 1 through 50, inclusive)**

100.     Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

101.     Defendant and DOES 1 through 50, inclusive, conduct as alleged herein was done with oppression, fraud, and malice.  Defendant was fully aware of the safety risks of carbon monoxide poisoning from the subject portable generator.  Nonetheless, defendant deliberately sold their product and crafted their labeling, marketing, and promotion to mislead consumers.

102.     At the time defendant and DOES 1 through 50 manufactured, marketed, labeled, promoted, distributed, and/or sold the subject portable generator, defendant and DOES 1 through 50, inclusive, knew of the uses for which the subject portable generator was intended, including of usage while sleeping, and they impliedly warranted the subject portable generator to be of merchantable quality and safe for such use.

103.     Harbor Freight Tools USA, Inc. knew or had reason to know that decedents and the consuming public were relying upon their skill and judgment to select or provide a product that was suitable and safe.  Particularly, since defendant and DOES 1 through 50, inclusive, held itself out as having special knowledge and skill regarding portable generators.

104.     Decedents justifiably relied upon the skill and judgment of defendant and DOES 1 through 50, inclusive.

/ / /

/ / /

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

PANISH | SHEA | RAVIPUDI LLP

105.     Through marketing, advertisements, and labels, defendant and DOES 1 through 50, inclusive, expressly warranted to decedents and others that the subject portable generator was safe and effective for reasonably anticipated uses, including using it while asleep.

106.     Defendant and DOES 1 through 50, inclusive, breached their implied warranties of merchantability because the subject portable generator was never a suitable for any use and never fit for the ordinary purposes for which it was intended.

107.     Defendant and DOES 1 through 50, inclusive, breached their implied warranties of fitness because the subject portable generator was not of a quality generally acceptable in trade.

108.     Defendant and DOES 1 through 50, inclusive, breached their implied warranties of fitness because the subject portable generator's performance did not fulfill the promises of safety implied by the container and label.

109.     The subject portable generator also did not conform to the express representations because it caused injury and death when used by decedents.

110.     At the time of sale of the subject portable generator, defendant and DOES 1 through 50, inclusive, knew, or should have known, or were reckless in not knowing, that the subject portable generator was defective and was an unsafe environment for use, especially while asleep.  Nonetheless, defendant and DOES 1 through 50, inclusive, provided no warning regarding the danger the subject portable generator posed to its users and defendant and DOES 1 through 50, inclusive, continued to manufacture, market, advertise, distribute, and sell the subject portable generator.  Defendant and DOES 1 through 50, inclusive, breached their express warranties because the subject portable generator was never a suitable product for use.

111.     The failure of the subject portable generator to have the expected quality, as described herein, was a substantial factor and the legal and proximate cause of the injuries, death, and pain suffered by decedents, and damages by plaintiffs as complained herein.

112.     Defendant and DOES 1 through 50, inclusive, failure to represent the hazardous and dangerous nature of the subject portable generator, as described herein, was a substantial factor and the legal and proximate cause of the injuries, death, and pain suffered by decedents, and damages by plaintiffs as complained herein.

24

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

113.    This was not done by accident or through some justifiable negligence.  Rather, defendant knew that it could turn a profit by convincing consumers that subject portable generator was safe.  This was done, despite defendant being fully aware of available safety mechanisms and protective devices to prevent carbon monoxide poisoning.  For example, as alleged herein, plaintiffs are further informed and believe that defendant and DOES 1 through 50, inclusive, manufactured, distributed, and sold other portable generator models that have a carbon monoxide cut-off sensor switches, including, but not limited to, defendant's CO SECURE technology, which would have prevented the injuries alleged herein, including the untimely death of decedents.

114.    Defendant's objective to convince consumers of the safety of the subject portable generator was accomplished not only through its misleading labeling, but through a comprehensive scheme of selective fraudulent research and testing, misleading advertising, and deceptive omissions.  Decedents were denied the right to make an informed decision about whether to purchase or use the subject portable generator, knowing the full risks attendant to that use.  Such conduct was despicable and done with conscious disregard of the rights and safety of decedents.

115.    There is no indication that defendant will stop its deceptive and unlawful marketing practices unless punished and deterred.  Accordingly, plaintiffs request punitive damages against defendant and DOES 1 through 50, inclusive.

116.    As a legal, proximate, and direct result of the aforementioned conduct of defendant and DOES 1 through 50, inclusive, and each of them, decedents were injured and hurt in their health, strength and activity, sustaining serious injuries to their body, and shock and injury to nervous system and person, all of which said injuries caused decedents great physical and mental pain and suffering.

117.    As a legal, proximate, and direct result of the aforementioned conduct of defendant and DOES 1 through 50, inclusive, and each of them, decedents were compelled to and did employ the services of physicians, surgeons, and other medical personnel, and plaintiffs were compelled to and did incur other incidental expenses related to the necessary care and treatment of such injuries.

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

PANISH|SHEA|RAVIPUDI LLP

118.    As a legal, direct, and proximate result of the negligence, carelessness, and/or violation of the law, by defendant and DOES 1 through 50, inclusive, plaintiffs have sustained damages resulting from the loss of love, affection, society, service, comfort, support, right of support, expectations of future support, and counseling, companionship, solace and mental support, as well as other benefits and assistance, of decedents, all to their general damages in a sum in excess of the jurisdictional limits of this Court, which will be stated according to proof, in accordance with California Code of Civil Procedure section 425.10.

119.    As a legal, proximate, and direct result of the aforementioned conduct of defendant and DOES 1 through 50, inclusive, and each of them, plaintiffs will be deprived of financial support, financial assistance, and/or household services of decedents in a sum in excess of the jurisdictional limits of this Court, which will be stated according to proof, in accordance with California Code of Civil Procedure section 425.10.

120.    As a legal, direct and proximate result of the conduct of defendant and DOES 1 through 50, inclusive, plaintiffs have incurred economic losses, including, but not limited to, funeral and burial expenses for decedents in an amount to be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

121.    Defendant's and DOES 1 through 50, inclusive, actions were done in a willful and conscious disregard for the rights and safety of decedents.  Defendant's conduct was despicable and so base, vile, and contemptible that it would be looked down on and despised by reasonable people.  This conduct, which was carried on by defendant with a willful and conscious disregard of the rights and safety of decedents, and the general public, was the direct, legal, and proximate cause of the injuries and deaths of decedents.

122.    Defendant's and DOES 1 through 50, inclusive, actions were either committed or authorized, ratified, or otherwise approved by officers, directors, or managing agents of defendant and DOES 1 through 50, inclusive, in a deliberate, cold, callous, malicious, and/or intentional manner, as fully set forth above.

123.    As a result, plaintiffs request the assessment of punitive damages against defendant, and DOES 1 through 50, inclusive, in an amount appropriate to punish or set an example of them

26

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

for their despicable conduct in conscious disregard of the rights and safety of others that resulted in this, and other, tragic deaths.

124. The conduct of Defendant and DOES 1 through 50, inclusive, was a substantial factor and proximate cause of the serious personal injuries and the deaths of decedents.

125. As a legal, direct, and proximate result of the conduct of defendant and DOES 1 through 50, inclusive, plaintiff GUILLERMINA M. GARCIA, as a successor-in-interest to decedent Fernando Olea Cano, hereby seeks all damages accruing to decedent Fernando Olea Cano in a survival action, under California Code of Civil Procedure section 377.34, including punitive damages, against defendant and DOES 1 through 50, inclusive.

126. As a legal, direct, and proximate result of the conduct of defendant and DOES 1 through 50, inclusive, plaintiff Celia Alegria Dominguez, as successor-in-interest to decedent Pedro Cobix Zapo, hereby seeks all damages accruing to decedent Pedro Cobix Zapo in a survival action, under California Code of Civil Procedure section 377.34, including punitive damages, against defendant and DOES 1 through 50, inclusive.

## FOURTH CAUSE OF ACTION

**(Survival Action by Plaintiff GUILLERMINA M. Garcia against Defendant Freight Tools USA, Inc. and DOES 1 Through 50, Inclusive.)**

127. Plaintiff GUILLERMINA M. GARCIA re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

128. Plaintiff GUILLERMINA M. GARCIA is informed and believes, and thereon alleges, that the aforementioned subject incident that gave rise to this lawsuit caused decedent Fernando Olea Cano to suffer traumatic and life-threatening injuries. After the foregoing causes of action arose in his favor, decedent Fernando Olea Cano, who would have been the plaintiff in this action if he had lived, passed away.

129. Plaintiff GUILLERMINA M. GARCIA, surviving spouse of decedent Fernando Olea Cano, as successor-in-interest pursuant to California Code of Civil Procedure section 377.11, brings this survival cause of action pursuant to California Code of Civil Procedure section 377.30.

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

130.    Plaintiff GUILLERMINA M. GARCIA is informed and believes, and thereon alleges, that as a legal, direct and proximate result of the unlawful, reckless and negligent conduct of defendant and DOES 1 through 50, inclusive, and each of them, as aforesaid, following the subject incident in which decedent Fernando Olea Cano sustained numerous traumatic injuries to his person, decedent Fernando Olea Cano survived for an appreciable period of time after the initial impact and/or initial injury before subsequently dying.

131.    Decedent Fernando Olea Cano sustained severe injuries to his body that, as a legal, direct and proximate result of the conduct, actions, negligence, recklessness, carelessness, and violation of the law by all defendant and DOES 1 through 50, inclusive, and each of them, ultimately resulted in his death, and therefore, plaintiff GUILLERMINA M. GARCIA, as decedent Fernando Olea Cano's successor-in-interest, seeks all damages accruing to decedent Fernando Olea Cano in a survival action, pursuant to California Code of Civil Procedure section 377.34, including pre-death injuries and pre-death pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, and serious emotional distress.

132.    All of said damages combine to a sum in excess of the jurisdictional minimum of this Court, including any damages decedent Fernando Olea Cano would have been entitled to had he lived, including pre-death injuries and pre-death pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, and serious emotional distress, which will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

**FIFTH CAUSE OF ACTION**

**(Survival Action by Plaintiff Celia Alegria Dominguez as against Defendant Freight Tools USA, Inc.  and DOES 1 through 50, inclusive.)**

133.    Plaintiff Celia Alegria Dominguez alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

28

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

134.    Plaintiff Celia Alegria Dominguez is informed and believes, and thereon alleges, that the aforementioned subject incident that gave rise to this lawsuit caused decedent Pedro Cobix Zapo to suffer traumatic and life-threatening injuries.  After the foregoing causes of action arose in his favor, decedent Pedro Cobix Zapo, who would have been the Plaintiff in this action if he had lived, passed away.

135.    Plaintiff Celia Alegria Dominguez , surviving spouse of decedent Pedro Cobix Zapo, as successor-in-interest pursuant to California Code of Civil Procedure section 377.11, brings this Survival cause of action pursuant to California Code of Civil Procedure section 377.30.

136.    Plaintiff Celia Alegria Dominguez is informed and believes, and thereon alleges, that as a legal, direct and proximate result of the unlawful, reckless and negligent conduct of defendant and DOES 1 through 50, inclusive, and each of them, as aforesaid, following the subject incident in which decedent Pedro Cobix Zapo sustained numerous traumatic injuries to his person, decedent Pedro Cobix Zapo survived for an appreciable period of time after the initial impact and/or initial injury before subsequently dying.

137.    Decedent Pedro Cobix Zapo sustained severe injuries to his body that, as a legal, direct and proximate result of the conduct, actions, negligence, recklessness, carelessness, and violation of the law by defendant and DOES 1 through 50, inclusive, and each of them, ultimately resulted in his death, and therefore, plaintiff Celia Alegria Dominguez, as decedent Pedro Cobix Zapo's Successor-in-Interest, seeks all damages accruing to decedent Pedro Cobix Zapo in a Survival Action, pursuant to California Code of Civil Procedure section 377.34, including pre-death injuries and pre-death pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, and serious emotional distress.

138.    All of said damages combine to a sum in excess of the jurisdictional minimum of this Court, including any damages decedent Pedro Cobix Zapo would have been entitled to had he lived, including pre-death injuries and pre-death pain and mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, and serious emotional distress, which will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

**PANISH | SHEA | RAVIPUDI LLP**

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray for judgment against Defendant Harbor Freight Tools USA, Inc. and DOES 1 through 50, inclusive, and each of them, as follows:

1.    For general damages (also known as non-economic damages) suffered by plaintiffs, including, but not limited to, loss of love, affection, care, society, service, comfort, support, right to support, companionship, solace or moral support, expectations of future support and counseling, other benefits and assistance of decedents, pain and suffering, loss of enjoyment of life, physical impairment, grief, anxiety, humiliation, emotional distress, disfigurement, all of which will be stated according to proof, and beyond the jurisdictional minimum of this Court, and in a sum within the jurisdiction of this Court and which will be established according to proof at trial;

2.    For economic damages (also known as economic damages), suffered by plaintiffs, including, but not limited to, for funeral and burial expenses, loss of earnings, lost earning capacity, loss of financial support, past and future hospital, medical, professional, and incidental expenses, as well as past and future loss of opportunity, all of which will be stated according to proof;

3.    For exemplary and punitive damages sufficient to punish and deter the defendant and others from future fraudulent practices;

4.    For fees and costs of suit incurred, including attorney fees herein;

5.    For prejudgment interest, according to proof; and

6.    For such further relief as the Court may deem just and proper.

DATED: January 28, 2025                    PANISH | SHEA | RAVIPUDI LLP

By: _____
Adam K. Shea
Nicholas W. Yoka
Jordan Phillips
Attorneys for Plaintiffs

30

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

**DEMAND FOR TRIAL BY JURY**

Plaintiffs demand trial by jury against all defendants as to all causes of action and forms of relief.

DATED:  January 28, 2025                    PANISH | SHEA | RAVIPUDI LLP


By: _____
Adam K. Shea
Nicholas W. Yoka
Jordan Phillips
Attorneys for Plaintiffs

PANISH | SHEA | RAVIPUDI LLP

PLAINTIFFS' COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL